JULIE SCHUMER, SBN 82814
Attorney at Law
PMB 120, 120 Village Square
Orinda, Ca. 94563
(925) 254-3650
(505) 466-6247 (fax)
juliesch@ix.netcom.com

Attorney for Petitioner
DAVID MICHAEL LEON

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID MICHAEL LEON,                    ) Case No.  C07-5719 CRB
                                       )
        Petitioner,                    )
                                       )
    vs.                                )
                                       )
JAMES A. YATES, Warden,                )
Pleasant Valley State Prison;          )
JAMES E. TILTON,                       )
Director California                    )
Department of Corrections,             )
                                       )
        Respondents.                   )
_____)


**TRAVERSE TO ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1

2
# TABLE OF CONTENTS

3
**PAGE**

4
TABLE OF AUTHORITIES                                                    iii

5

6
TRAVERSE                                                               1

7
MEMORANDUM OF POINTS AND AUTHORITIES                                   3

8

9        I.     THE STATE COURT'S REJECTION OF PETITIONER'S
                DUE PROCESS CLAIM REGARDING PRE-ACCUSATION
10              DELAY WAS CONTRARY TO CLEARLY ESTABLISHED
                SUPREME COURT PRECEDENT.                               3

11

12              A.     There is clearly established U.S. Supreme Court
                       precedent to support Petitioner's claims.        3

13

14              B.     Actual prejudice.                               8

15              C.     Unreasonable application.                       12

16       II.    THE STATE COURT'S CONCLUSION THAT PETITIONER
17              WAS NOT DEPRIVED OF THE EFFECTIVE ASSISTANCE
                OF COUNSEL WAS AN UNREASONABLE APPLICATION
18              OF CLEARLY ESTABLISHED UNITED STATES
                SUPREME COURT PRECEDENT.                               14
19

20              A.     Unsettled law.                                 15

21
                B.     No informed tactical decision.                 17
22

23              C.     Unreasonable application.                       18

24       III.   THE STATE COURT UNREASONABLY REJECTED
                PETITIONER'S CLAIM THAT THE TRIAL COURT'S
25              EXCLUSION OF THIRD PARTY CULPABILITY

26

27

EVIDENCE DENIED HIM HIS RIGHT TO PRESENT A
DEFENSE AND TO DUE PROCESS.     23

    A.     Unreasonable application.     23

    B.     Substantial and injurious effect on the verdict.     27

IV.     PETITIONER WAS DEPRIVED OF HIS SIXTH
AMENDMENT RIGHT TO A JURY TRIAL AND
FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS
BY THE TRIAL COURT'S ERRONEOUS DISMISSAL OF
A JUROR DURING DELIBERATIONS.     29

CONCLUSION     33

**TABLE OF AUTHORITIES**

**FEDERAL AUTHORITIES**

Alberni v. McDaniel (9th Cir. 2006)     6
458 F.3d 860

Brecht v. Abrahamson (1993)     27
507 U.S. 619

Chia v. Cambra (9th Cir. 2004)     25
360 F.3d 997

Douglas v. Woodford (9th Cir. 2002)     21
316 F.3d 1079

Frantz v. Hazey (9th Cir. 2008)     13
2008 WL 2600143

Higgins v. Renico (6th Cir. 2006)                                        22
470 F.3d 624

Houston v. Roe (9th Cir. 1999)                                           6
177 F.3d 901

Intertrust Technologies Corporation v. Microsoft Corporation (N.D. Cal. 2003)  10
275 F.Supp.2d 1031

Medellin v. Dretke (2008)                                                  22
544 U.S. 660

Panetti v. Quartermain (2007)                                             14
___U.S.___, 127 S.Ct. 2842

Riley v. Payne (9th Cir. 2003)                                       21, 32
352 F.3d 1313

Rios v. Rocha (9th Cir. 2002)                                           21
299 F.3d 796

Rompilla v. Beard (2005)                                               14, 22
545 U.S. 374

Sanders v. Lamarque (9th Cir. 2004)                                     29
357 F.3d 943

Sanders v. Ratelle (9th cir. 1994)                                      20
21 F.3d 1446

Sarausad v. Porter (9th Cir. 2007)                                      27
479 F.3d 671

Strickland v. Washington (1984)                                          15
466 U.S. 668

Taylor v. Maddox (9th Cir. 2004)                                    27, 32
366 F.3d 992

United States v. Barken (9th Cir. 2005)                                 5
412 F.3d 1131

United States v. Doe (9th Cir. 1998)                                    5
149 F.3d 1139

United States v. Huntley (9th Cir. 1992)                                5
976 F.2d 1287

United States v. Lovasco (1977)                                         4
431 U.S. 783

United States v. Marion (1971)                                         3
404 U.S. 307

United States v. Mays (9th Cir. 1977)                                 5, 6
549 F.2d 670

United States v. Moran (9th Cir. 1985)                                7, 8
759 F.2d 777

United States v. Sherlock (9th Cir. 1989)                              5
962 F.2d 1349

Van Hook v. Anderson (6th 2008)                                       18
2008 WL 2952109

Van Tran v. Lindsey (9th Cir. 2000)                                    6
212 F.3d 1143

Wiggins v. Smith (2003)                                               20
539 U.S. 510

Williams v. Taylor (2000)                                             23
529 U.S. 362

1

**STATE CASES**

2

Fowler v. Superior Court (1984)                                          11
162 Cal.App.3d 215

People v. Archerd (1970)                                                 13
3 Cal.3d 615

People v. Catlin (2001)                                                  13
26 Cal.4th 81

People v. Cudjo (1993)                                                   24
6 Cal.4th 585

People v. Feggans 91967)                                                 16
67 Cal.2d 444

People v. Hill (1984)                                                    13
37 Cal.3d 491

People v. Morris (1988)                                                  13
46 Cal.3d 1

People v. Page (1991)                                                    16
2 Cal.App.4th 161

People v. Son (2000)                                                     16
79 Cal.App.4th 224

Scherling v. Superior Court (1978)                                       13
22 Cal.3d 493

**OTHER AUTHORITIES**

28 U.S.C. 2254(d)(1) and (2)                                          13, 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Traverse/Points and Authorities
C07-5719 CRB                              -vi-

1

2  JULIE SCHUMER, SBN 82814
   Attorney at Law
3  PMB 120, 120 Village Square
   Orinda, CA 94563
4  (925)254-3650
5  (505)466-6247 (fax)
   juliesch@ix.netcom.com
6

7  Attorney for Petitioner
   DAVID MICHAEL LEON
8

9
                    UNITED STATES DISTRICT COURT
10

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  DAVID MICHAEL LEON,           )      Case No. C07-5719 CRB
                                  )
13                                )
         Petitioner,              )      TRAVERSE
14                                )
15       vs.                      )
                                  )
16  JAMES A. YATES, Warden, et al. )
                                  )
17       Respondents.             )
                                  )
18  _____)

19

20

21            TRAVERSE TO ANSWER
       TO PETITION FOR WRIT OF HABEAS CORPUS
22

23  _____DAVID MICHAEL LEON, Petitioner, makes this Traverse to

24  Respondent's Answer to the Petition for Writ of Habeas Corpus filed November 9,

25  2007 and alleges as follows:

26

27
   Traverse/Points and Authorities
28 C07-5719 CRB                    -1-

1      1.   Paragraph I is true except that Petitioner is not lawfully confined.

2      2.   Paragraph II is true.

3

4      3.   Paragraph III and all its component parts is untrue.

5      4.   Paragraph IV is true except that Petitioner is submitting

6
concurrently with this Traverse the two state habeas petitions filed in the Superior

7
Court and Court of Appeal, respectively, as those are as of yet not included in the

8
record.

9

10      5.   Petitioner incorporates by reference and resubmits his Petition for

11
Writ of Habeas Corpus, the exhibits and materials submitted in support thereof, as

12
if fully set forth herein.

13

14      6.   Petitioner also incorporates the Memorandum of Points and

15
Authorities, and exhibits submitted herewith, supporting and accompanying this

16
Traverse.

17

18      Wherefore, Petitioner respectfully submits that the Petition for Writ

19
of Habeas Corpus should be granted.

20

21   Dated: 8/11/08                    Respectfully submitted,

22                                      /s/ Julie Schumer

23                              _____

24                              JULIE SCHUMER, Attorney for
                                Petitioner DAVID MICHAEL
25                              LEON

26

27
Traverse/Points and Authorities
28   C07-5719 CRB                 -2-

1

2
## MEMORANDUM OF POINTS AND AUTHORITIES

3

4      **I.      THE STATE COURT'S REJECTION OF**
               **PETITIONER'S DUE PROCESS CLAIM**
5               **REGARDING PRE-ACCUSATION DELAY**
               **WAS CONTRARY TO CLEARLY ESTABLISHED**
6               **SUPREME COURT PRECEDENT.**

7

8           Respondent argues that there is no clearly established U.S. Supreme

9  Court precedent for a due process claim of delay based on negligence, that new

10 California Supreme Court authority requires a showing of intentional delay by the

11
   prosecution for the purpose of gaining an advantage, that Petitioner has not
12

13 rebutted by clear and convincing evidence the state court's findings that he did not

14 establish actual prejudice and that such finding was not an unreasonable

15
   application of Supreme Court precedent.  (Points and Authorities in support of
16

17 Answer (hereinafter "P&A", 18-34.)  Respondent's arguments are unconvincing

18 and should be rejected by this Court.

19
        **A.      There is clearly established U.S. Supreme Court**
20               **precedent to support Petitioner's claim.**

21
           First, Respondent contends there is no clearly established U.S.
22

23 Supreme Court authority to support Petitioner's due process claim relating to pre-

24 accusation delay based on negligence.  Petitioner disagrees.

25
           Respondent cites <u>United States</u> v. <u>Marion</u>, 404 U.S. 307 (1971) for
26

27
   Traverse/Points and Authorities
28 C07-5719 CRB                         −3−

1   the proposition that due process requires dismissal of an indictment if it is shown

2

3   that pre-indictment delay in the particular case caused substantial prejudice to the

4   defendant's rights to a fair trial and the delay was intentional to gain a tactical

5   advantage.  (P&A, 21, Id., at p. 324.)  However, the subsequent U.S. Supreme

6

7   Court case on point, United States v. Lovasco, 431 U.S. 783 (1977) interprets

8   Marion as follows:

9           "Thus, Marion makes clear that proof of prejudice is generally
            a necessary but not sufficient element of a due process
10          claim, and that the due process inquiry must consider the
            reasons for the delay as well as the prejudice to the
11          accused."

12

13  Lovasco thus prescribes a balancing test.  That this is so becomes crystal clear later

14  in the opinion:

15
            "In Marion we conceded that we could not determine in
16          the abstract the circumstances in which preaccusation
            delay would require dismissing prosecutions.  404 U.S., at
17          324, 92 S.Ct. At 465.  More than five years later, that
            statement remains true.  Indeed, in the intervening years so
18          few defendants have established that they were prejudiced
            by delay that neither this Court nor any lower court has had
19          a sustained opportunity to consider the constitutional
            significance of various reasons for the delay.  We therefore
20          leave to the lower courts the task of applying the settled
            principles of due process that we have discussed to the
21          particular circumstances of individual cases."  (Id., at p. 797.)

22

23

24  Lovasco thus prescribes a broad constitutional holding, leaving it to individual

25  courts to apply these principles on a case by case basis.

26

27
    Traverse/Points and Authorities
28  C07-5719 CRB                          − 4 −

Since <u>Lovasco</u>, the 9th Circuit has consistently applied a balancing test, as described in <u>United States</u> v. <u>Barken</u>, 412 F.3d 1131 (9th Cir. 2005).  That test requires a defendant claiming unconstitutional pre-accusation delay to first establish actual prejudice from the delay.  If he can meet that requirement, "the delay is weighed against the reasons for it, and the defendant must show that the delay "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions."  (<u>Id</u>., at 1134.)  This test is cited in numerous 9th Circuit opinions.  (See <u>United States</u> v. <u>Mays</u>, 549 F.2d 670, 677-679 (9th Cir. 1977); <u>United States</u> v. <u>Huntley</u>, 976 F.2d 1287, 1290 (9th Cir. 1992); <u>United States</u> v. <u>Sherlock</u>, 962 F.2d 1139, 1353-1354 (9th Cir. 1992); <u>United States</u> v. <u>Doe</u>, 149 F.3d 945, 948 (9th Cir. 1998).)  Notably, both <u>Sherlock</u> and <u>Huntley</u>, for example, cite <u>Lovasco</u> as authority for the imposition of this test.  (<u>Sherlock</u>, 962 F.2d at p. 1354; <u>Huntley</u>, 976 F.2d at p. 1290.)  Further, <u>Mays</u>, in cataloguing what circumstances should be balanced as part of the balancing test, which is what <u>Lovasco</u> directed lower courts to do, specifically allows negligent conduct to be considered:

> "In addition, although weighted less heavily than deliberate delays, negligent conduct can also be considered, since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  (Citations omitted.)  Where the defendant has established actual prejudice due to an unusually lengthy government-caused

1
2
3

> pre-indictment delay, it then becomes incumbent upon the
> government to provide the court with its reason for the
> delay."  (Mays, 549 F.2d at 678.)

4   Thus, the balancing test mandated by Lovasco, has been clarified and applied

5   consistently by the 9th Circuit.

6
7           "Clearly established federal law, as determined by the Supreme

8   Court of the United States" means the holdings, not dicta of the Supreme Court at

9   the time of the state court decision.  (Van Tran v. Lindsey, 212 F.3d 1143, 1154

10  (9th Cir. 2000), rev. other grounds, Andrade v. Lockyer, 538 U.S. 63, 75-77 (2003).

11
12  The "Supreme Court need not have addressed a factually identical case [;] section

13  2254(d) only requires that the Supreme court clearly determine the law."  (Houston

14  v. Roe, 177 F.3d 901, 905 (9th Cir. 1999).)  Further:

15
16
17
18
19
20
21
22

> ". . .when the Supreme Court has expressly reserved
> consideration of an issue, as it has here, the petitioner
> cannot rely on circuit authority to demonstrate that the
> right he or she seeks to vindicate is clearly established.
> (Citation omitted.)  Circuit 'precedent derived from
> an extension of a Supreme Court decision is not "clearly
> established federal law as determined by the Supreme
> Court."'  (Citation omitted.)  'Circuit precedent is
> relevant only to the extent it clarifies what constitutes
> clearly established law.'  (Citation omitted.)"
> (Alberni v. McDaniel 458 F.3d. 860, 864 (9th Cir. 2006)

23
24  Given that, as more fully set forth above, Ninth Circuit precedent on point has

25  clarified the Lovasco standard at the invitation of that very court itself, the

26
27
    Traverse/Points and Authorities
28  C07-5719 CRB                          −6−

1  balancing test set forth by Petitioner in the various Ninth Circuit cases he has cited

2

3  amounts to "clearly established federal law" for purposes of AEDPA's section

4  2254(d)(1).

5        United States v. Moran, 759 F.2d 777 (9th Cir. 1985), a case relied

6  upon by Respondent for the proposition that an approach allowing for

7

8  consideration of negligence as sufficient for a due process delay claim is not

9  compelled by either Marion or Lovasco actually says the opposite and clarifies that

10  that is what those cases hold.  First, Moran acknowledged that the balancing test

11

12  was set forth in Mays and that it specifically acknowledged that delays caused by

13  governmental negligence would be considered in the balance.  (Id., at p. 781.)  In

14  rejecting the prosecution's contention that Marion and Lovasco required a showing

15

16  of intentional or reckless conduct by the government, the Moran court stated:

17        "We reject this contention.  The language from these two cases
       merely acknowledges governmental concessions that
18        intentional or reckless conduct would or might be
       considered violations of the due process clause if actual
19        prejudice had been shown.  The Lovasco court did not
       set out intent or recklessness as required standards of fault.
20        In fact, in both the Marion and Lovasco cases, the Court
       stated that it 'could not determine in the abstract the
21        circumstances in which preaccusation delay would require
       dismissing prosecutions.'  Lovasco, 431 U.S. at 796, 97 S.Ct.
22        at 2052.

23

24

25        . . . . . . . . .

26

27

28  Traverse/Points and Authorities
   C07-5719 CRB                 −7−

1
2
3
4
5
6

> Thus, the government's assertion that <u>Lovasco</u> overrules the possibility that due process might be violated upon a negligent delay by the government is not supported by the cited cases. The <u>Lovasco</u> court simply held that after proof of prejudice is shown, 'the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.' (<u>Id.</u>, at 790, 97 S.Ct. at 2048. This is fully consistent with the <u>Mays</u> standard." (<u>Moran</u>, <u>supra</u>, 759 F.2d at 781.)

7

8

9

10

11

Thus, the balancing test proposed by Petitioner that includes consideration and

weighing of the prosecution's negligence as among the potential panoply of

reasons to be balanced is clearly established federal law as determined by the U.S.

Supreme Court and clarified by the Ninth Circuit.[1]

12

13

14

15

16

### B.     Actual prejudice.

Respondent contends that Petitioner's claim must fail because "he

has not rebutted by clear and convincing evidence the state court's findings that

17

18

19

20

21

22

23

24

25

26

---

[1]     The prosecution discusses a new California Supreme Court case, <u>People</u> v. <u>Nelson</u> 43 Cal.4th 1242 as reaffirming "that this state has interpreted <u>Marion</u> and <u>Lovasco</u>, consistent with the majority approach, as requiring a showing of bad faith by the prosecution or intentional delay for the purpose of gaining advantage, in addition to actual prejudice, to state a due process claim under the federal Constitution." (P&A at 25.) Notably, <u>Nelson</u> fails to take into account the Ninth Circuit's clarification of <u>Lovasco</u> and <u>Marion</u> as set forth in the cases cited above, which allow for a weighing of the prosecutor's negligent delay in the balance if actual prejudice is shown. As such, <u>Nelson</u> is hardly persuasive authority for what the federal standard is.

27

28

1  petitioner did not establish actual prejudice." (P&A at 27.) Respondent then

2  addresses each of Petitioner's assignments of prejudice, quoting liberally from the

3  California Court of Appeal's opinion on the matter. (P&A at 27-32.) Petitioner

4  disagrees and responds to the most significant of these points.

5

6          With respect to the loss of the original 911 call and dispatch tapes,

7  the state court opinion cited by Respondent notes that there was no factual dispute

8  concerning when Palmer Bass removed the marijuana from Marlon's room.

9  However, this is untrue. Mr. Bass testified two different ways on the subject. He

10  stated initially that he did not remember finding drugs in Marlon's room the night

11  before the murder, then later testified that he removed them from Marlon's room

12  that night, i.e. the night before the murder. (6 RT 623-625, 648-649.) Further the

13  reviewing court's conclusion that there was no factual dispute on this subject is

14

15  inconsistent with the prosecutor's theory of the case that Petitioner bought drugs

16  from Marlon the day of the shooting. The prosecution presented the testimony of

17  Troy Tibbils concerning a purchase of marijuana from Petitioner through Marlon

18  on the day of Marlon's death. (12 RT 1429-1442.) Thus, this subject was clearly

19  disputed.

20

21          Respondent does not address the issue of the loss of physical

22  evidence from the scene, including the failure to fingerprint the baseball bat, glass

23

24

25

26

27

28  Traverse/Points and Authorities
   C07-5719 CRB              –9–

1    and latch at the front door.  It must be presumed he lacks a persuasive reply.

2    (Intertrust Technologies Corporation v. Microsoft Corporation 275 F.Supp.2d

3    1031, 1051 (N.D. Cal. 2003) ["an argument that lacks appropriate supporting

4

5    citations is no argument at all."].)

6
         With respect to the loss of Troy Tibbil's traffic ticket, the state court
7
     opinion quoted by Respondent concludes that because Tibbil could not fix the date
8
9    of the marijuana deal with Petitioner or the date of the ticket with certainty and

10   could not state they occurred on the same day, any tendency the ticket would have

11
     had to show Petitioner and Marlon were not together on the day of the murder was
12
13   speculative.  The state court further describes other evidence linking Petitioner to

14   Marlon the day of the murder: "[Petitioner] told the police he spoke to Marlon the

15
     day of the murder and drove by his house, and he told Keasling that he went to
16
17   Marlon's house that day to pick up some drugs.  Under the circumstances,

18   [Petitioner] has not shown that the unavailability of the traffic ticket was

19
     prejudicial as a matter of law."  (P&A at 29.)
20
21       First, the state court's conclusion imposes an impossible burden on

22   Petitioner.  Because the ticket was unavailable due to the passage of time, there

23
     was no way he could prove its date.  Indeed, that is the fundamental due process
24
25   violation in a delay such as in this case.  This issue should not be defeated because

26

27
     Traverse/Points and Authorities
28   C07-5719 CRB                    -10-

1   "a defendant [can] only 'speculate' that the evidence lost during an unexplained

2   delay in the proceedings would have assisted him, when, of course, that is the basis

3

4   for the motion in the first place."  (Fowler v. Superior Court (1984) 162

5   Cal.App.3d 215, 220.)  Second, the evidence referenced by the state court does not

6   show a lack of prejudice relating to the absence of the ticket as a matter of law.

7
    Petitioner's statement to the police does not place him physically with Marlon on
8
9   the day of his death, it merely shows they had some verbal, not necessarily

10  physical contact, and that Petitioner drove by Marlon's house.  Keasling's report

11
    was colored by the fact that she had been drinking when it was given and the
12
13  officers questioning her threatened her if she did not make certain statements

14  incriminating petitioner.  (11RT 1358, 12 RT 1373-1374, 1382, 1386.)

15
            With respect to the unavailability of documentation of Bernard
16
17  Wesley's jewelry purchase which Petitioner asserted would have assisted him in

18  challenging the alibi of Wesley, who had been a suspect in the case, Respondent

19
    quotes a portion of the state court opinion to the effect that Petitioner's assertion
20
21  that he might have been able to show that the purchase was on a date other than the

22  murder, thus negating Wesley's alibi, was speculative and that Petitioner could not

23
    demonstrate prejudice because there was evidence that Wesley had stopped on
24
25  Curtner near the 7-Eleven on the day of the murder on his way to meet his

26

27
    Traverse/Points and Authorities
28  C07-5719 CRB                    -11-

girlfriend for her lunch break, that Petitioner saw him near the 7-Eleven at that time, and that Wesley's girlfriend testified that he on occasion would meet her on her lunch break and might have given her some jewelry during such a lunch break. (P&A, at 29-30.)

First with respect to the contention that Petitioner's claim regarding the significance of documenting the jewelry purchase was speculative, Petitioner reiterates his citation of <u>Fowler</u>, <u>supra</u>, above.  Second, the evidence cited by the state court opinion did not substantiate Wesley's alibi, thus obviating the prejudice flowing from the lack of the receipt or other documentation of the claimed jewelry purchase.  The fact that he was on Curtner and was seen by Petitioner near the 7-Eleven did not preclude him from having killed Marlon.  Further, that Wesley's girlfriend said he had on unspecified occasions had lunch with her during her lunch break and that he might have given her some jewelry during such a lunch break visit did not establish that he did so on the date in question.

### C.    Unreasonable application.

Respondent claims that the state court's conclusion that Petitioner failed to demonstrate actual prejudice in light of its findings was not an unreasonable application of U.S. Supreme Court precedent.  Petitioner disagrees.

The last reasoned opinion on the subject of pre-accusation delay is

Traverse/Points and Authorities
C07-5719 CRB                    -12-

the decision by the California Court of Appeal, 6th District, Exhibit A, submitted in

conjunction with Petitioner's Petition herein.  In that opinion, at pages 10 and 11,

the California reviewing court did not identify any United States Supreme Court

authority or even federal appellate authority identifying the standard it was using to

measure the claim.  It merely identified the California state court standard

contained in cases such as People v. Catlin (2001) 26 Cal.4th 81, 107; Scherling v.

Superior Court (1978) 22 Cal.3d 493, 505; People v. Archer (1970) 3 Cal.3d 615,

640; People v. Morris (1988) 46 Cal.3d 1, 37; and People v. Hill (1984) 37 Cal.3d

491.  This failure is fatal to the prosecution's position.  It is impossible to know if

the California appellate court followed any such U.S. Supreme Court authority or

if it did, what standard that was.  The reviewing court may not insulate its ruling by

failing to identify the standard and authority employed.  Allowing such would

prevent this Court from determining whether the California appellate court's ruling

is contrary to clearly established law by failing to establish the correct controlling

authority.  (See Williams v. Taylor 529 U.S. 362, 413-414 (2000); Frantz v.

Harzey____F.3d ___, 2008 WL 2600143, *5, et seq. (9th Cir. 2008).)

       The California Court of Appeal's opinion must be construed against

28 U.S.C. 2254(d) which reads:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to a judgment of a State court shall not be

Traverse/Points and Authorities
C07-5719 CRB                     -13-

1
2
3

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4
5

(1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

6
7
8

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

9 Here, because of the failure of the last reasoned state court opinion to identify what

10 U.S. Supreme Court authority it was using to evaluate Petitioner's claim related to

11
12 pre-accusation delay, section 2254(d)(1) is inapplicable and this Court must review

13 the claim de novo and without the deference required by the AEDPA.  (Panetti v.

14 Quartermain, ___U.S.___, 127 S.Ct. 2842 (2007); Rompilla v. Beard, 545 U.S.

15
16 374, 390.)

17

18
19
20
21

      II.      **THE STATE COURT'S CONCLUSION THAT PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WAS AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED UNITED STATES SUPREME COURT PRECEDENT.**

22       Respondent asserts that Petitioner's claim of ineffective assistance of

23
24 counsel lacks merit because the law as to the issue appellate counsel failed to raise

25 was unsettled at the time she filed the opening brief, appellate counsel made an

26
27 Traverse/Points and Authorities
28 C07-5719 CRB          -14-

1   informed tactical decision not to raise the issue, and the last reasoned state court

2   opinion on the subject was not an unreasonable application of <u>Strickland</u> v.

3

4   <u>Washington</u> (1984) 466 U.S. 668 and other relevant U.S. Supreme Court authority.

5   (P&A 58-63.)  Respondent's arguments are unpersuasive.

6          Before Petitioner addresses the merits of Respondent's arguments, it

7   is important to reiterate that the issue appellate counsel failed to raise, that of the

8

9   improper denial of defense expert testimony on the subject of police-coerced

10  statements by witnesses, related to the testimony of Petitioner's father, Michael

11  Leon, who had, in a police interview, made highly incriminating statements

12  concerning Petitioner's alleged commission of the murder.  This evidence was the

13

14  most significant evidence against Petitioner, as other evidence that has been argued

15  to support his conviction was fraught with issues that impacted its strength.  (See

16  discussion of this point in Petitioner's petition on file herein at pp. 79.)  Thus, the

17

18  appellate issue concerning the denial of the ability to present a defense expert to

19  attack Michael Leon's statement was one of critical importance.

20

21         **A.    Unsettled law.**

22         First, Petitioner will address the so-called unsettled state of the law

23  relative to this argument at the time appellate counsel filed her opening brief.  As

24  both parties have noted, at the time the opening brief was filed in the state direct

25

26

27

1   appeal, there were two cases addressing the issue of the admissibility of the type of

2   expert testimony sought to be admitted by trial counsel in this case: People v. Son

3   79 Cal.App.4th 224 (2000) and People v. Page 2 Cal.App.4th 161 (1991).

4   Respondent claims that Son is directly on point and "posed a substantial hurdle for

5   appellate counsel to have to overcome in pursuing the issue on appeal."  In fact,

6   Son is distinguishable from the case at bar in that there was no evidence of

7   coercive tactics in that case, plus the defendant admitted he confessed for a reason

8   unrelated to any such coercive tactics, thus the expert's testimony was irrelevant.

9   (Id., at p. 241.)  Respondent argues as to Page that it provided no direct support for

10  Petitioner's claim because the appellate court was not directly called upon to

11  decide this exact issue.  Even assuming arguendo, that Respondent is correct as to

12  Page, not only did Son, the case argued to be directly on point not pose a bar to the

13  argument since it was readily distinguishable, but Respondent has ignored the

14  plethora of cases cited by Petitioner from other jurisdictions then on the books

15  supporting the admission of this type of expert testimony[2], on occasion by the very

16  same expert, as well as appellate counsel's duty to advance the law when possible.

17  (People v. Feggan 67 Cal.2d 444, 447-448 (1967).)  Thus the "legal landscape"

18  referred to by Respondent clearly provided a platform for appellate counsel to raise

---

[2]      These cases are cited in the Petition at p. 71 and for the
sake of brevity will not be renamed here.

Traverse/Points and Authorities
C07-5719 CRB                    -16-

1    the issue.

2

3

4        **B.    No informed tactical decision.**

5        Respondent argues that appellate counsel's declaration submitted in

6    support of the state habeas petitions filed by Petitioner on this subject show she

7
     was aware of the then published California law on the subject, had previously
8
9    unsuccessfully raised the issue in another case, that she personally did not think the

10   tape of Michael Leon's statement to the police showed coercive tactics, and  that

11
     she felt establishing prejudice would be problematic given the other evidence
12
13   against Petitioner.  (P&A at 59-60, Exhibit F to Petition.)  Respondent then

14   concludes that appellate counsel made an informed tactical decision not to raise the

15
     issue.  (P&A at 60.)  Respondent is wrong.
16
17       Viewing counsel's declaration as a whole, in addition to the fact that

18   she was no expert on coercive police tactics, it is clear she did not view all of the

19
     available legal authority.  In her declaration (Exhibit F to Petition), appellate
20
21   counsel specifically listed the cases she reviewed before she rejected the idea of

22   raising this issue.  (Paragraph 6(b) of Exhibit F to Petition.)  This list did not

23
     include any of the cases described on page 71 of the Petition.  In response to a
24
25   query by current habeas counsel as to whether or not she had specifically reviewed

26

27

those cases, she stated she did not recall and thus could not say whether she did or

did not review them.  (Paragraph 7 of Exhibit F to Petition.)  The fact that she

specifically described in detail which cases she had reviewed when reporting this

information to the Sixth District Appellate Project in the "unbriefed issues" section

of her compensation claim, information which is provided under penalty of

perjury,[3] undercuts the credibility of her more recent statement that she does not

recall having reviewed the other cases presented to her by current habeas counsel.

Further, given the numerous and substantial problems inherent with the evidence

argued to be supportive of Petitioner's guilt, as catalogued at pp. 76-78 of the

Petition, appellate counsel's conclusion that any error would have been harmless

was clearly not based on any critical analysis of such evidence.  Thus, appellate

counsel's decision not to raise the issue was not based upon proper investigation of

the law and facts and was thus not a reasonable tactical decision insulating her

from a claim of IAC.  (Van Hook v. Anderson ___F.3d___, 2008 WL2952109, *2-

3 (6th Cir. 2008) [setting forth counsel's duty, under Strickland, to investigate fully

all aspects of a case unless counsel makes a reasonable tactical choice to limit the

investigation];

###        C.        Unreasonable application.

---

[3]        See Exhibit J, the declaration of Julie Schumer, Esq.,
submitted concurrently with this Traverse.

1    Respondent argues that the last reasoned opinion on this issue, which

2    is the order of the Superior Court dated April 18, 2007 denying the state habeas

3    petition initially filed in the Santa Clara County Superior Court was not an

4    unreasonable application of U.S. Supreme court cases identifying the standards

5    pertaining to ineffective assistance of counsel.  Respondent states that the state

6    court's conclusion that appellate counsel made a reasonable tactical decision to

7    forego the issue in favor of raising other stronger issues was reasonable, that the

8    state court's finding that the weight of other evidence against Petitioner would

9    render any error associated with this issue as harmless, thus Petitioner could not

10   demonstrate prejudice, were all a reasonable application of the established

11   standards relating to IAC.  (P&A at 60-61.)   Respondent also claims that the state

12   court properly denied the state habeas petition based on ineffective assistance of

13   counsel "for failing to assert a legal position that was unsettled and had already

14   been rejected in the state courts."  (P&A at p. 62.)  Petitioner disagrees.

15       Taking the last point first, the last and only reasoned state court

16   opinion did not deny the habeas petition on the basis that the applicable law was

17   unsettled.  Nowhere in the opinion is such a concept mentioned.  Indeed, the state

18   court opinion specifically found that the issue was "arguable."  (Exhibit D, p. 1, to

19   Petition.)  The basis of the denial of the petition was the state court's conclusion

Traverse/Points and Authorities
C07-5719 CRB                    -19-

1  that Petitioner could not establish prejudice, a subject upon which Petitioner will

2  have further comments, infra.  (Exhibit D to Petition, p. 2-4.)

3

4         The state court's determination that appellate counsel made an

5  appropriate tactical decision to not raise the issue in question is an unreasonable

6  application of the Strickland standard for the simple reason that, as has been

7  demonstrated in the Petition and its supporting documents as well as in this

8

9  traverse, appellate counsel did not conduct a thorough investigation of the

10  available law and facts, as more fully set forth in section B, above.

11

12         "'Strategic choices made after thorough investigation of law
       and facts relevant to plausible options are virtually
13     unchallengeable; and strategic choices made after less than
       complete investigation are reasonable precisely to the extent
14     that reasonable professional judgments support the limitations
       on investigation.  In other words, counsel has a duty to make
15     reasonable investigations or to make a reasonable decision that
       makes particular investigations unnecessary.'" (Wiggins v.
16     Smith 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003); also see
       Sanders v. Ratelle 21 F.3d 1446, 1456 (9th Cir. 1994)
17

18

19  The state court's opinion fails to address  that appellate counsel did not conduct

20  the proper legal and factual investigation with respect to the omitted issue, instead

21  addressing the prejudice prong of the Strickland test.

22

23         Further, the state court's conclusion that any error would have been

24  harmless was objectively unreasonable because it failed to consider Petitioner's

25  analysis of the deficiencies in the evidence proclaimed to be supportive of guilt,

26

27

28  Traverse/Points and Authorities
    C07-5719 CRB                         -20-

1  which deficiencies were catalogued in the state habeas presented to the Superior

2  Court.  (Exhibit H, at 49-52, filed concurrently with this traverse.)  This is an

3

4  unreasonable application of the <u>Strickland</u> standard.  (<u>Williams</u> v. <u>Taylor</u> 529 U.S.

5  362, 397 (2000).)  The "unreasonable application" prong of section 2254(d0(1)

6  does not bar relief where the state court fails to consider facts which it should have

7
   considered in resolving a constitutional claim, as happened here.  In applying this
8

9  rule, it is proper to conclude that a state court's failure to discuss certain evidence

10 means the state court did not consider the evidence, even if described in its

11
   statement of facts (or elsewhere).  If it is not discussed in the specific context of
12

13 the constitutional claim at issue, section 2254 will not bar relief.  See e.g., <u>Douglas</u>

14 v. <u>Woodford</u> 316 F.3d 1079, at 1089-1090 (9th Cir. 2003); <u>Rios</u> v. <u>Rocha</u> 299 F.3d

15
   796, at 805-806 (9th Cir. 2002); <u>Riley</u> v. <u>Payne</u> 352 F.3d 1313, at 1322-1325 (9th
16

17 Cir. 2003) [state court decision rejecting defendant's ineffective assistance of

18 counsel claim based on trial counsel's failure to interview and present the

19
   testimony of a key defense witness who would have corroborated critical parts of
20

21 defendant's version of events an objectively unreasonable application of <u>Strickland</u>

22 standard where the state court did not properly address the impact of the missing

23 witness's testimony].

24
       The state court's decision is an unreasonable application of
25

26

27
   Traverse/Points and Authorities
28 C07-5719 CRB                    -21-

1   Strickland for two additional reasons.  First, despite the fact that the Strickland

2   standard has two prongs, unreasonable tactical choice plus prejudice, here the state

3

4   court collapsed its analysis into "the single inquiry of whether prevailing on the

5   expert testimony would have made a difference."  (Exhibit D to Petition, p. 2.)

6   Thus the state court only addressed one part of the two part Strickland test.  Under

7

8   such circumstances, the April 18, 2007 order is not "on the merits" for section

9   2254(d) purposes and that section is therefore inapplicable to the prong not

10  addressed by the state court.  (Rompilla v. Beard 545 U.S. 374, 390 (2005)

11

12  [Because the state courts found the representation adequate, they never reached the

13  issue of prejudice,. . . and so we examine this element of the Strickland claim de

14  novo; Higgins v. Renico 470 F.3d 624, 631 (6th Cir. 2006) [where state court failed

15

16  to address performance prong of Strickland test, addressing only the prejudice

17  prong, federal habeas court considers performance prong de novo Medellin v.

18  Dretke 544 U.S. 660, 679-680 (2008) (O'Connor, J., diss. from dism. of cert. as

19

20  improvidently granted).

21          Second the state court decision failed to consider evidence it should

22  have in evaluating the prejudice prong of the Strickland test.  In reviewing whether

23

24  any error by appellate counsel would have been harmful or not, the Superior Court

25  merely adopted the Court of Appeal's superficial analysis of this evidence in that

26

27

Traverse/Points and Authorities
28  C07-5719 CRB                    -22-

context, ignoring all of the deficiencies in said evidence brought to the Superior

Court's attention by Petitioner in his petition filed in that court.  (Exhibit H, at 49-

51.)  Under <u>Williams</u> v. <u>Taylor</u>, <u>supra</u>, this failure on the part of the Superior Court

constitutes an unreasonable application of <u>Strickland</u>.  (<u>Williams</u> v. <u>Taylor</u>, <u>supra</u>,

592 U.S. at 397.)


**III.    THE STATE COURT UNREASONABLY REJECTED PETITIONER'S CLAIM THAT THE TRIAL COURT'S EXCLUSION OF THIRD PARTY CULPABILITY EVIDENCE DENIED HIM HIS RIGHT TO PRESENT A DEFENSE AND TO DUE PROCESS.**

**A.    Unreasonable application.**

Respondent contends that the state court in its opinion in Petitioner's

direct appeal reasonably rejected his claim that the exclusion of certain third party

culpability evidence did not deny him his constitutional right to due process or to

present a defense.  (P&A 39-44.)  Said third party culpability evidence, it will be

recalled, consisted of a nod by Blaine Buscher at a card playing party to an

assertion by another person there that he [Buscher] had killed the nigger, meaning

Marlon Bass, coupled with the sighting of a person who could have been Buscher

in and around the area of Marlon's house before, around the time of and after the

murder.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   Respondent argues that the state court's decision upholding the trial

court's exclusion of Buscher's nod at the all night card party was reasonable

because the state court "reasonably found that the evidence did not establish the

foundational predicate that Buscher even heard the comment let alone that [sic]

understood it to be a reference to the Bass murder, which occurred two months

earlier, and was nodding in assent, as opposed to an acknowledgment that he was

beating his opponent in cards during that very game and thus did not constitute an

adoptive admission."  (P&A at 39-40.)  Petitioner disagrees.

   The evidence was not as tenuous, vague or ambiguous as the state

court's opinion and Respondent make it out to be.  While it is true that there was

confusion about what was meant by the question and answer, issues over Buscher

denying involvement in the crime and professing not to understand that the

"nigger" reference was to the killing of Marlon Bass, cross-examination would

have flushed out the meaning, context and veracity of the adoptive admission.  It

was not for the trial court to substitute its judgment as to the credibility of these

witnesses, such was to be left to the jury's determination.  (People v. Cudjo 6

Cal.4th 585, 609-610 (1993).)  Notably, the person who elicited the nod from

Buscher after the "you killed the nigger" statement, Wall,  was the one who first

reported it to the police, noting they might find it interesting in connection with the

investigation into Marlon's murder.  (RT 146.)  Obviously, as of the time of that

report, Wall believed Buscher had acknowledged participation in the crime.  Wall

later retreated from this position stating he did not know if Buscher understood the

reference to be to Marlon.  (RT 145-146, 1994-1995, CT 973.)   However, his

credibility on this score was a jury question, as Cudjo teaches.  Respondent's

suggestion that somehow Buscher's assent to the "you killed the nigger" statement

referred to another Black man with whom he was then playing cards, Billy

Baptiste, is illogical at best.  Baptiste was sitting at the table, alive, so Buscher

could not have been referring to him.

Respondent asserts that the state court ruling was not unreasonable

because the excluded evidence failed the test for admissibility set forth in Chia v.

Cambra 360 F.3d 997, 1004 (9th Cir. 2004.)  Chia prescribes a balancing test in a

habeas proceeding to determine if the exclusion of evidence in the trial court

constitutes a due process violation.  By way of summary, the factors to be balanced

include (1) the probative value of the excluded evidence; (2) the reliability of the

excluded evidence; (3) whether the evidence can be evaluated by the trier of fact;

(4) whether the evidence is cumulative to the issue as to which it is offered; and

(5) whether the evidence is a major part of the defense.  (Chia, supra, 360 F.3d at

p. 1004.)  Here, the evidence was highly probative, as it provided an alternative

actor in Marlon's murder.  The fact that it consisted of a self-inculpatory admission

enhanced its reliability (<u>Chia</u>, 360 F.3d at p. 1004-1005).  The jury could have

evaluated this evidence, making all necessary credibility determinations.  While it

was not the only third party culpability evidence offered, it was a major part of the

overall and only defense that someone else had committed the crime.

Respondent argues that the state court reasonably concluded that the

evidence of Buscher's nod had little probative value, was unreliable given the

circumstances under which it was given, the problems in proving it and that the

parties involved later contradicted it.  (P&A 42.)   Respondent's argument is

unpersuasive.

Although the state court found that Buscher's nod was too

ambiguous in context to constitute an adoptive admission to Marlon's murder, this

ruling fails to accord the proper weight to  several key factors.  One is that part of

Petitioner's offer of proof in the trial court was that Buscher knew Marlon (2 RT

149), Buscher had a handgun (2 RT 149), and the only African-American in the

room at the time of this interchange with Wall was alive and well, playing cards,

thus the reference could not have been to him.  Further, Wall reported this

interchange to the police, telling them it might be interesting in the context of the

investigation of Marlon's murder.  Such report is an indicator of the importance

Traverse/Points and Authorities
C07-5719 CRB                    -26-

Wall gave the exchange despite his later denial that Buscher knew his nod referred

to Marlon's murder.  Further, the fact that there were inconsistencies as to whether

or not Buscher meant the nod as an admission to murder or not raised credibility

concerns that were for the jury, not the trial court to decide, as has been previously

observed, and was not a basis upon which to exclude the evidence or sanctify its

exclusion.

Given that the state court's conclusion was an unreasonable

determination in light of the evidence presented, section 2254(d) does not bar

relief.  (Sarausad v. Porter 479 F.3d 671, 678 (9th Cir. 2007); Taylor v. Maddox

366 F.3d 992, 1001 (9th Cir. 2004), cert. den., 125 S.Ct. 809  ["the state court fact-

finding process is undermined where the state court has before it, yet apparently

ignores, evidence, that supports petitioner's claim"].)

**B.    Substantial and injurious effect on the verdict.**

Respondent argues that Petitioner's claim must in any event fail

because the standard of Brecht v. Abrahamson 507 U.S. 619, 637 (1993), that there

must be a substantial and injurious effect on the verdict, cannot be met here due to

the allegedly overwhelming nature of the evidence.  (P&A at 42.)   Petitioner

disagrees.

In recounting the evidence claimed to be overwhelming, Respondent

Traverse/Points and Authorities
C07-5719 CRB                    −27−

1   points to Petitioner's confession to Danette Arbuckle and her younger brother,

2   Shelby, his alleged revelation to Shelby of details claimed not to have been

3   otherwise made public, his having told Troy Tibbils he was going to go to

4

5   Marlon's to buy marijuana from him on what turned out to be the day of Marlon's

6   death, the testimony of Bernard Wesley describing Petitioner's attempt to recruit

7   him to participate in burglarizing Marlon's house and the details of his plan, his

8

9   allegedly having more cash after the crime, and his leaving the area after the crime.

10  (P&A at p. 42-43.)  Petitioner has already addressed the deficiencies in this

11  evidence that render it underwhelming rather than overwhelming and, for the sake

12

13  of brevity, refers the Court to that extensive discussion in his Petition.  (Petition at

14  50-51.)

15          Respondent further argues that the evidence concerning Buscher was

16  of "minimal significance" because the only two witnesses to his admission would

17  have denied that he made any admission to murder.  Again, these denials are

18

19  counterbalanced by the fact that one party present, Wall, reported it to the police, a

20  testament to the significance he believed it had at that time.  The unsurprising

21  denials came later for who would expect Buscher to actually admit to the police

22

23  that he had intended the nod as a confession to murder!

24          The fact that there was some third party culpability evidence

25

26

27  Traverse/Points and Authorities

28  C07-5719 CRB                    -28-

presented at trial does not ameliorate the injurious effect on the outcome of

excluding such evidence relating to Buscher.  Nor is the trial court's personal

belief in Petitioner's guilt, as quoted by Respondent (P&A at 44)  relevant to an

analysis of whether the evidence against him was truly overwhelming or not.


IV.    **PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO A JURY TRIAL AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS BY THE TRIAL COURT'S ERRONEOUS DISMISSAL OF A JUROR DURING DELIBERATIONS.**

Respondent asserts that the last reasoned state court opinion

upholding the trial court's dismissal of Juror 6 during deliberations due to his

failure to reveal a bias against police during voir dire and his subsequent lying to

the court when questioned about making or not making certain statements

indicative of such bias during deliberations was not an unreasonable application of

applicable federal constitutional law.  (P&A 48.)  Petitioner's arguments are

unpersuasive and should be rejected by this Court.  The state court's basis for

removing the juror, untruthfulness during voir dire concerning a bias against

police, and later lying to the trial court about statements made during deliberations

indicative of such bias was an objectively unreasonable determination of the

relevant facts in light of the evidence presented in the state court proceedings.

1    (Sanders v. Lamarque 357 F.3d 943, 948 (9th Cir. 2004).)

2         As Petitioner argued in his Petition, the factual record does not
3
4    establish that  Juror 6  intentionally concealed a negative bias toward law

5    enforcement during voir dire which would support his discharge.  During voir dire,
6
7    Juror 6 revealed he had a cousin in law enforcement, but this would not impact his

8    ability to be fair.  He could think of no reason why he couldn't be fair.  (2 ART

9    174-175.)  He felt "strongly" about holding the prosecution to their burden of

10   proof beyond a reasonable doubt "because it's their job to prove."  (2 ART 176.)[4]
11
12   When asked by the prosecutor, "When I asked the earlier questions about

13   particularly good or bad experiences with law enforcement, about the victim's

14   background, dealing drugs, and the other questions about being able to weigh the
15
16   evidence at the end of trial, any questions that were outstanding, is there anything

17   that came to mind?", Juror 6 said no.  (2 ART 177.)  Taking away the garbled

18   syntax of the question which was compound and vague, the prosecutor was
19
20   essentially asking the juror if he had had any bad experiences with police along

21   with whether the issue of the victim being a drug dealer would affect him.  While

22   he had suffered numerous arrests, Juror 6 said no.  He subsequently explained this

23   ────────────────

24         [4]    Notably, during the trial court's discussions with Juror 6
             during deliberations, Juror 6 told the court that he did not
25            believe that the prosecutor had proved the case beyond a
             reasonable doubt.  (24 Rt 2731.)
26

27
     Traverse/Points and Authorities
28   C07-5719 CRB              -30-

answer, when questioned during deliberations, by stating that, essentially, he had

gotten what he deserved.  Although during the process of determining whether or

not to discharge Juror 6 the trial court had before it the record of the juror's

numerous arrests, the court did not ask him a single question about them to

determine if there were circumstances about them that would have caused him to

harbor negative feelings about the police.  The fact of having been arrested

numerous times proved nothing without some evidence to show that Juror 6

harbored negative feelings toward the police as a result.  Respondent asks this

Court to consider the voir dire proceedings as a whole which includes questions

asked of other jurors in evaluating the intentional concealment of bias during voir

dire aspect of the dismissal issue rather than the specific questions addressed to

Juror 6 himself, during voir dire, making him responsible for perfect memory of

proceedings which did not involve him directly.  Yet Respondent cites no case in

support of this.

       The state court's finding that  Juror 6 lacked credibility when he

stated during voir dire he could be fair and impartial based on his subsequent

denial that he had witnessed a thirteen year old friend being shot, something

reported by certain of the other jurors  (24 RT 2759, 2748) was similarly an

unreasonable factual determination based on the evidentiary record herein.   In the

last reasoned state court opinion, that of the California Court of Appeal, that court relied upon the statements of other jurors in concluding that Juror 6 had lied to the court about statements attributed to him during deliberations that showed bias. (Petition, Exhibit A, p. 34.)  However, the opinion did not consider the statements of all such jurors but rather recounted only a portion of them.  (Petition, Exhibit A, p. 33.)  This "undermines" the state court fact-finding process.  (Taylor v. Maddox, supra, 366 F.3d at 1001; Payne v. Riley, supra, 352 F.3d at 1322-1325 [unreasonable application of Strickland standard where state court did not properly address the impact of the testimony of a missing witness who counsel failed to interview].)

When Juror 6 denied having made any statements about at age 13 seeing a friend shot, the trial court stated, "ten people told me that."  (24 RT 2748.) In fact, that was not the case.  Juror 1 testified that Juror 6 said he saw a friend shot in the stomach when he was 13.  (24 RT 2734.)  Juror 2 said Juror 6 saw his first shooting when he was 13 years old.  (24 RT 2737.)  Juror 3 said Juror 6 claimed a friend had been shot in the stomach.  (24 RT 2738.)   Juror 8 said Juror 6 said he was raised in a rough part of town where there where shootings and stabbings.  (24 RT 2742.)  Juror 12 stated that Juror 6 had said that one of his friends had been shot.  (24 RT 2747.)  Thus, only two jurors, not ten, as asserted by the trial court,

Traverse/Points and Authorities
C07-5719 CRB                    -32-

1   claimed that Juror 6 had said something about a friend being shot in the stomach,

2
3   and only one juror claimed that it was a thirteen year old that had been shot.  Per

4   Juror 12, Juror 6 did not say that a police officer had done the shooting.   The

5   vagaries of the various jurors' reports is hardly a sufficient factual basis upon

6
7   which to conclude that Juror 6 lied to the trial court about what occurred during

8   deliberations or that his comments evinced a negative bias against police.

9

10                              **CONCLUSION**

11
12  _____        Based on the foregoing, as well as the contents of Petitioner's

13  Petition for Writ of Habeas Corpus on file herein, and all exhibits, Petitioner

14  respectfully submits that the instant Petition be granted.

15
    Dated: 8/11/08                    Respectfully submitted,
16

17

18                                    /s/ Julie Schumer

19

20                                    _____
                                      JULIE SCHUMER, Attorney for
21                                    Petitioner DAVID MICHAEL LEON

22

23

24

25

26

27
    Traverse/Points and Authorities
28  C07-5719 CRB                        -33-